# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANGELA P. ROBINSON** | ) | |
| | ) | **Case No. 1:15-cv-00130-CAB** |
| **Plaintiff,** | ) | |
| | ) | **Judge Christopher A. Boyko** |
| **v.** | ) | |
| | ) | |
| **NATIONAL PAYMENT RELIEF, LLC,** | ) | |
| *et al.* | ) | **AMENDED COMPLAINT** |
| **Defendants.** | ) | **Jury Demand Endorsed Hereon** |

Plaintiff, Angela P. Robinson, for her first amended complaint against National Payment Relief, LLC, NPR Capital, LLC and Alberto Artasanchez (collectively, "Defendants"), states:

## INTRODUCTION

1.      Plaintiff brings this action to secure redress from the unlawful collection practices engaged in by Defendants in connection with an alleged second mortgage debt.  Plaintiff seeks actual, statutory and treble damages for Defendants' knowing, willful and/or negligent violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and the Ohio Consumer Sales Practices Act, O.R.C. § 1345, *et seq*. ("CSPA").  Plaintiff also brings forth an Ohio common law claim of intrusion upon seclusion against Defendants.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367 and 15 U.S.C. § 1692*k*(d).  Venue is proper in this district and division in that Defendants transact business in this district and division and the conduct complained of occurred in this district and division.

## PARTIES

3.      Angela P. Robinson is an adult individual who resides in Cuyahoga County, Ohio, and is a "consumer" as that term is defined by the FDCPA and CSPA.

4.      National Payment Relief, LLC ("NPR") is a Pennsylvania limited liability company with its principal place of business at 512 Pennsylvania Avenue Fort Washington, PA 19034.  NPR transacts business in this district and throughout the United States.

5.      NPR Capital, LLC ("NPR Capital") is a Delaware limited liability company with its principal place of business at 361 Lehigh Avenue Perth Amboy, NJ 08861.  NPR Capital transacts business in this district and throughout the United States.

6.      NPR and NPR Capital are in the business of purchasing non-performing second mortgage notes for pennies-on-the-dollar, and then reselling those notes and/or attempting to collect the debts associated with those notes from the homeowner.  NPR and NPR Capital engage in collection efforts on notes that they purport to hold ownership or investor rights to, as well as on notes that are held or invested in by third parties.  Ultimately, NPR and NPR Capital seek to profit by getting the homeowner to recommit to paying the debt, or by liquidating the lien through a foreclosure of the property.

7.      NPR and NPR Capital are each a "debt collector" and a "supplier" as those terms are defined in the FDCPA and CPSA, respectively.

8.      Alberto Artasanchez ("Artasanchez") is an owner, principal and/or organizing member of numerous debt-buying entities, including both NPR and NPR Capital.  Artasanchez's registered address, as stated in NPR's *Certificate of Organization* filing with the Pennsylvania Department of State is 361 Lehigh Avenue Perth Amboy, NJ 08861.  Artasanchez participated

in, controlled, established, directed, ratified and/or acquiesced in the business practices complained of in this complaint.

Conspiracy / Collusion / Common Enterprise

9.      NPR and NPR Capital are unified by common interest, ownership and control such that there is not a separate corporate existence.  For example, NPR and NPR Capital are co-plaintiffs in a foreclosure action that was filed against Ms. Robinson, as further discussed in this complaint.  As such, the corporate Defendants are merely alter-egos of Artasanchez and must therefore be disregarded.

10.     Defendants have conspired, colluded, and/or operated as a common enterprise in engaging in the acts and practices as set forth in this complaint.

11.     Because Defendants have conspired, colluded, and/or operated as a common enterprise in engaging in the acts and practices as set forth in this complaint, each Defendant is jointly and severally liable for such acts and practices.

## **FACTUAL ALLEGATIONS**

### **Background**

12.     Ms. Robinson executed a promissory note in December 2005 secured by her single-family residence ("Second Mortgage").  The property was not used for business, but only for personal, family and/or household purposes.

13.     The Second Mortgage was serviced by GMAC Mortgage ("GMACM").

14.     Ms. Robinson made all required monthly payments on the Second Mortgage, which carried a high 10.85% interest rate, until approximately January 2009.

15.     Due in large part to the increasing medical attention her son with special needs required, and the significant costs associated with this medical care, Ms. Robinson began to fall behind on her Second Mortgage around this time.

16.     In or around May 2009, Ms. Robinson visited the Cleveland offices of Neighborhood Assistance Corporation of America ("NACA") to seek guidance as to potential loss mitigation options or workout solutions with her mortgage servicers.

17.     Upon information and belief, NACA was able to come to terms on an agreement in which GMACM would forgive and release Ms. Robinson's obligation on the Second Mortgage because she was underwater as to her first mortgage and met other certain criteria.

18.     Upon information and belief, Residential Funding Company, LLC (or one of its parent or subsidiary companies) was the legal owner of both of Ms. Robinson's mortgage loans at the time GMACM agreed to forgive Ms. Robinson's obligation on the Second Mortgage.

19.     GMACM charged-off Ms. Robinson's Second Mortgage debt in June 2009.

20.     Over the next four (4) years, Ms. Robinson did not receive any billing statements, correspondence or communications of any kind relating to the Second Mortgage.

21.     Ms. Robinson has remained current on her first mortgage since June 2009, although she is still significantly "underwater" on same (her property's current fair market value is $30,000.00+ less than the current balance on her first mortgage).

**NPR's Abusive Collection Campaign**

22.     Beginning in or around May 2013, NPR, claiming to have legal ownership of Ms. Robinson's Second Mortgage note, has sought collection of the alleged Second Mortgage debt through various means, including but not limited to: (i) dunning letters sent to Ms. Robinson's residence, typically in the form of a "Late Payment Notice" or "Mortgage Statement" (example

4

copies of each are attached collectively hereto as Exhibit 1); (ii) frequent phone calls to Ms. Robinson's residence and work place; (iii) unannounced, in-person visits to Ms. Robinson's residence by agents of NPR; and, when those efforts failed, (iv) foreclosure of the lien.

23.     Each "Late Payment Notice" received by Ms. Robinson: (i) failed to identify the original creditor of, or otherwise sufficiently identify, the account being collected upon; (ii) acknowledged that NPR is a "debt collector"; (iii) misrepresented the amount of the debt owed, if such debt still legally exists; and (iv) confused Ms. Robinson by arriving in an envelope bearing the return address of an unknown third-party named "Richmond Monroe Group, Inc." *See* Exhibit 1.

24.     Each "Mortgage Statement" received by Ms. Robinson: (i) failed to identify the original creditor of, or otherwise sufficiently identify, the account being collected upon; (ii) acknowledged that NPR is a "debt collector"; (iii) misrepresented the amount of the debt owed, if such debt still legally exists; (iv) falsely stated that NPR is the "legal owner" of the Second Mortgage note; and (v) confused Ms. Robinson by arriving in an envelope bearing the return address of an unknown third-party named "Richmond Monroe Group, Inc."  *See* Exhibit 1.

25.     Other dunning letters NPR sent to Ms. Robinson would name unknown third parties, such as "American Loan Services," doing business as NPR (a copy of one such letter is attached hereto as Exhibit 2).

26.     Dunning letters such as the example attached as Exhibit 2: (i) falsely stated that a company *dba* NPR owned the debt; (ii) failed to sufficiently identify the original creditor, the current owner of the account and/or the account being collected upon, ultimately confusing and/or misleading Ms. Robinson; (iii) misrepresented NPR as a "servicer" to the extent that it had loan modification or other workout "programs" that Ms. Robinson could "qualify" for; (iv)

5

falsely stated and/or misrepresented that foreclosure proceedings would be filed in thirty (30) days; and (v) misstated the FDCPA to the extent it required Ms. Robinson to dispute the validity of the debt within fifteen (15) days instead of thirty (30).  *See* Exhibit 2.

27.    In September 2013, months after Ms. Robinson began receiving dunning letters and phone calls from NPR, Ms. Robinson received a letter from NPR stating that the "servicing of the account" had been transferred to NPR from "Coast Capital, LLC" as of August 13, 2013 ("RESPA Hello Letter") (a copy of which is attached hereto as Exhibit 3).

28.    The RESPA Hello Letter, dated September 23, 2013: (i) did not identify or reference any account despite stating that it did; (ii) misrepresented that "Rosalie Bucci" is a "workout specialist" despite the fact that she is an owner/principal of NPR; (iii) misrepresented that "servicing" of the mortgage had transferred from "Coast Capital, LLC" when such an entity does not legally exist; (iv) falsely stated and/or misrepresented that "servicing" of the account had been transferred when it had not; (v) falsely stated and/or misrepresented that NPR was Ms. Robinson's "servicer" when it was not, misleading Ms. Robinson into viewing NPR as a "servicer"; and (vi) falsely stated that a "coupon book or billing statement" would be sent.  *See* Exhibit 3.

29.    On or around the same day that she received the RESPA Hello Letter, Ms. Robinson also received a letter from NPR requesting certain information, documentation and authorization. ("Info/Auth Request") (a copy of which is attached hereto as Exhibit 4).

30.    The Info/Auth Request, dated September 23, 2013: (i) misrepresented that "Rosalie Bucci" is a "solutions specialist" despite the fact that she is an owner/principal of NPR; (ii) misled Ms. Robinson into viewing NPR as a "servicer" to the extent that NPR claimed to require the requested information to process a loan modification or other workout solution on

behalf of Ms. Robinson; (iii) misled Ms. Robinson into viewing NPR as a "servicer" to the extent that it sought information that was already in NPR's possession; (iv) misrepresented that NPR and/or "FCI Lender Services, Inc." employ "paralegals"; (v) demonstrated that NPR did not possess an up-to-date and/or accurate accounting of the alleged Second Mortgage debt by seeking authorization for the unknown third-party "FCI Lender Services, Inc."; and (vi) confused Ms. Robinson as to who was claiming ownership of the alleged Second Mortgage debt by seeking authorization for the unknown third-party "FCI Lender Services, Inc."  *See* Exhibit 4.

31.     On or around the same day that she received the RESPA Hello Letter and the Info/Auth Request, Ms. Robinson also received a letter from NPR entitled "Final Notice Before Legal Action" ("Final Notice") (a copy of which is attached hereto as Exhibit 5).

32.     The Final Notice, dated September 23, 2013: (i) did not identify or reference any account despite stating that it did; (ii) represented that "Rosalie Bucci" is a "workout specialist" despite the fact that she is an owner/principal of NPR; (iii) demonstrated NPR's true intentions by threatening foreclosure in thirty (30) days despite the fact that NPR sent out the RESPA Hello Letter and the Information/Authorization Request that same day; and (iv) falsely stated that NPR has a "legal department."  *See* Exhibit 5.

33.     On or around October 24, 2013, Ms. Robinson received a pre-foreclosure notice of default and acceleration from NPR's attorneys ("Notice of Default") (a copy of which is attached hereto as Exhibit 6).

34.     The Notice of Default: (i) misrepresented that the Second Mortgage had been assigned to NPR Capital from Southstar Funding, LLC; (ii) stated that NPR Capital was the creditor to whom Ms. Robinson owed the alleged debt, despite the fact that NPR had previously represented that it was the "legal owner" and that this was the first time Ms. Robinson had heard

of NPR Capital; and (iii) misrepresented the amount of the debt owed, if such debt still legally exists.  *See* Exhibit 6.

35.     On January 23, 2014, NPR's attorneys filed a foreclosure complaint against Ms. Robinson in Cuyahoga County Court of Common Pleas (Case No. CV 14 820633) naming both NPR and NPR Capital as the plaintiffs (the "Foreclosure Action") (a copy of which is attached hereto as Exhibit 7).

36.     On February 6, 2014, in response to the Foreclosure Action and determined to take whatever steps necessary to retain her home, Ms. Robinson filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio, Case No. 14-10663-aih.

37.     As NPR asserted a pre-petition claim against Ms. Robinson in an attempt to collect the alleged mortgage debt, the NPR claim was listed in Schedule "D" of Ms. Robinson's bankruptcy petition as a secured claim.  Ms. Robinson formally declared in the "Statement of Intention" section of her petition that the property was being retained.

38.     NPR, through its attorneys, received formal notice of the bankruptcy on or around February 12, 2014.  As of this date, Defendants were stayed by operation of bankruptcy law from pursuing any further collection efforts on the alleged Second Mortgage debt.  As such, the Foreclosure Action was stayed pending the resolution of Ms. Robinson's bankruptcy.

39.     Despite receiving notice of the bankruptcy filing, NPR has continued to mail a bi-monthly "Late Payment Notice" and/or "Mortgage Statement" to Ms. Robinson's residence, with the sole intention of inducing payment from Ms. Robinson.

40.     Despite receiving notice of the bankruptcy filing, NPR has continued to call Ms. Robinson at her home and place of employment, with the sole intention of inducing payment from Ms. Robinson.

8

41.     During at least one phone call placed by NPR since the bankruptcy filing, Ms. Robinson verbally notified NPR about her bankruptcy, told NPR that she was represented by an attorney, and requested that NPR cease contacting her.

42.     At no time during the bankruptcy did NPR object to or dispute the details of its claim that was included in the schedules filed as part of Ms. Robinson's bankruptcy petition.

43.     At no time during the bankruptcy did Ms. Robinson reaffirm the debt with NPR.

44.     At no time during the bankruptcy was NPR's pre-petition claim declared to be non-dischargeable.

45.     On or around May 21, 2014, the bankruptcy court issued an order granting Ms. Robinson a discharge of her debts, including the alleged Second Mortgage debt (the "Discharge Order").

46.     The Discharge Order terminated any rights NPR had to further collection efforts against Ms. Robinson that sought any monetary payment or judgment on the underlying debt.

47.     The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed with the bankruptcy court, including NPR.  Included in the notice was an explanation of the general injunction prohibiting NPR and others holding pre-petition claims from attempting to collect on those claims from Ms. Robinson.

48.     NPR, through its attorneys, received notice of the Discharge Order.

49.     On June 26, 2014, NPR's attorneys filed to reopen the Foreclosure Action, which remains unresolved to date.

50.     Despite receiving notice of the Discharge Order, NPR has continued to mail a bi-monthly "Late Payment Notice" and/or "Mortgage Statement" to Ms. Robinson's residence with the sole intention of inducing payment from Ms. Robinson.

51.     Despite receiving notice of the Discharge Order, NPR has continued to call Ms. Robinson at her home and place of employment, with the sole intention of inducing payment from Ms. Robinson.

52.     On or around August 14, 2014, Plaintiff's bankruptcy attorney ("Mr. Benson"), after being contacted by Ms. Robinson again following her discharge, mailed a letter to NPR requesting that it cease its ongoing collection efforts against Ms. Robinson in light of the discharge of the subject debt (a copy of which is attached hereto as Exhibit 8).

53.     Despite receiving the notice from Mr. Benson, NPR has continued to mail a bi-monthly "Late Payment Notice" and "Mortgage Statement" with the sole intention of inducing payment from Ms. Robinson.

54.     Despite receiving the notice from Mr. Benson, NPR has continued to call Ms. Robinson at her home and place of employment, with the sole intention of inducing payment from Ms. Robinson.

55.     Ultimately, as NPR engaged in the aforementioned collection efforts, NPR was never engaged in the "servicing" of Plaintiff's mortgage, but rather, was only ever attempting to collect a debt or liquidate the collateral.

56.     Absent litigation, Plaintiff does not believe Defendants will ever leave her alone.

### NoteDashBoard.com and NPR's Wrongful Foreclosure

57.     NPR's relentless collection campaign as described above has been initiated and managed online through www.notedashboard.com ("NoteDB").

58.     NoteDB, which is designed, owned and operated by Defendant Artasanchez, is the web-based software through which NPR, NPR Capital and a number of their close affiliates collect on the notes they purchase, including Ms. Robinson's.

59.     NoteDB is designed to provide a platform through which a debt buyer such as NPR or NPR Capital, with little to no prior collection experience, can systematically manage a collection campaign themselves.  NoteDB further provides the inexperienced note buyer a one-stop connection to certain affiliate-vendors that are necessary to effectuate the foreclosure process if the collection campaign proves to be unsuccessful.

60.     NoteDB's database houses many form dunning letters and letters purporting to treat the note-buying subscriber as a "servicer" of the mortgage account.

61.     Every letter Ms. Robinson received from NPR was generated through NoteDB.

62.     Upon information and belief, Ms. Robinson's personal, financial and credit information, including information related to the alleged Second Mortgage debt, is housed in NoteDB's database and freely accessible to all of NoteDB's active subscribers and/or members.

63.     NoteDB's active subscribers and/or members include: Richmond Monroe Group, Inc., Dreambuilder Investments, LLC, Trinity Financial Services, LLC, American Loan Services, LLC, FCI Lender Services, Inc. and "Coast Capital".

64.     Upon information and belief, through NoteDB or otherwise, Defendants operated as a common enterprise with the above-mentioned companies listed in Paragraph 59 in carrying out the collection campaign and Foreclosure Action against Ms. Robinson.

65.     According to MERS Servicer ID, Dreambuilder Investments, LLC is the current owner of the Second Mortgage, and Servis One, Inc. is the current servicer of the Second Mortgage.  *See* MERS Servicer ID Screen-Shot, dated January 5, 2015 (a copy of which is attached hereto as Exhibit 9).

66.     Upon information and belief, Wells Fargo Bank, N.A. is the current custodian and/or trustee of the original loan documents associated with the Second Mortgage.

67.    Upon information and belief, through NoteDB or otherwise, operating as a common enterprise with the above-mentioned companies listed in Paragraph 59, Defendants prepared, caused to be prepared and/or knowingly acquiesced in the preparation of no less than one (1) fabricated and/or fraudulent note allonge that Defendants subsequently attached, or caused to be attached, as an exhibit to the Foreclosure Action in an effort to establish chain-of-title and standing to foreclose.  *See* Exhibit 7 at pages 8-9 of 19.

68.    Upon information and belief, "Eileen Lindblom," who is an employee of Seneca Mortgage Investments, LP and Seneca Mortgage Servicing, LLC, is not authorized to sign note alloges on behalf of Dreambuilder Investments, LLC.  *See* Exhibit 7 at page 8 of 19.

69.    Upon information and belief, "Jessica Brown," who is an employee of Richmond Monroe Group, Inc., was not authorized to sign note alloges on behalf of Trinity Financial Services, LLC as of the date of filing of the Foreclosure Action.  *See* Exhibit 7 at page 9 of 19.

70.    Upon information and belief, as of the date of filing of the Foreclosure Action, there was no power-of-attorney or other document recorded in Cuyahoga County, Ohio purporting to grant "Eileen Lindblom" authority to sign note alloges on behalf of Dreambuilder Investments, LLC as to property located in Cuyahoga County, Ohio.

71.    Upon information and belief, as of the date of filing of the Foreclosure Action, there was no power-of-attorney or other document recorded in Cuyahoga County, Ohio purporting to grant employees of Richmond Monroe Group, Inc. authority to sign note alloges or mortgage assignments on behalf of Trinity Financial Services, LLC or MERS, respectively, as to property located in Cuyahoga County, Ohio.

72.    The recording of an executed power-of-attorney with the Cuyahoga County Recorder was required under Ohio law as a prerequisite to "Eileen Lindblom" or any Richmond

Monroe Group, Inc. employee signing mortgage assignments or note allonges on behalf of Dreambuilder Investments, LLC, Trinity Financial Services, LLC or MERS, respectively, as to property located in Cuyahoga County, Ohio.

73.     Upon information and belief, Defendants are aware of this Ohio law.

74.     Upon information and belief, the defendants listed in the Foreclosure Action are not all of the persons or entities who held a claim or interest in the Second Mortgage as of the date of filing of the Foreclosure Action.

75.     After a reasonable time to conduct discovery, Plaintiff believes she will be able to demonstrate that Defendants proceeded to file, or cause to be filed, the Foreclosure Action against her knowing that neither NPR nor NPR Capital had standing to do so.

## DAMAGES

76.     NPR's campaign to collect the alleged Second Mortgage debt, spanning a period of time from May 2013 through the present, has had a significant impact on Ms. Robinson's mental and physical well-being.  Throughout this time, Ms. Robinson has suffered through considerable and ever-increasing fear, anxiety, stress and sleeplessness, which has directly affected her job performance and personal relationships.  She has also experienced a considerable amount of embarrassment at her job due to NPR's calls to her work place.

77.     The unannounced appearances of NPR representatives at her home have particularly contributed to Ms. Robinson's distress and declining mental and physical well-being.

78.     Since NPR began to contact her in or around May 2013, Ms. Robinson has been consistently confused as to whether or not the alleged Second Mortgage debt still exists, and if so, the identity of the business entity that is legally entitled to seek collection of the debt and/or enforce the lien.  With Defendants' interchanging of many different entity names throughout the

collection campaign, Ms. Robinson justifiably fears that she could end up paying a fraudulent creditor and continue to have an outstanding debt with the real owner of the debt.

79.     Ms. Robinson was devastated to receive the foreclosure summons and complaint, especially given her belief that this debt had been forgiven, and the fact that she had been current on her first mortgage for years and was significantly underwater on the first mortgage alone.

80.     Ms. Robinson was forced to hire an attorney to defend her in the Foreclosure Action, resulting in attorney fees and other costs that Ms. Robinson had to pay.

81.     Ms. Robinson was forced into filing for bankruptcy because of the Foreclosure Action, resulting in attorney fees and other costs that Ms. Robinson had to pay.

82.     In September 2014, Ms. Robinson received notice from U.S. Bank, her first mortgage servicer, stating that she would be required to pay for all fees incurred by U.S. Bank as a result of its intervention in the Foreclosure Action.

## GROUNDS FOR RELIEF

### COUNT ONE
### VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT
### *15 U.S.C § 1692, et seq.*

83.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

84.     Plaintiff is a "consumer" as the term is defined in the FDCPA.

85.     The debt that Defendants were attempting to collect was a "consumer debt" as defined in 15 U.S.C. § 1692*a*.

86.     Defendants purchased or otherwise acquired the alleged Second Mortgage debt long after it had been charged-off by GMACM.  Defendants also regularly engage in the

collection of debts due to another person or entity.  As such, Defendants are "debt collectors" as that term is defined in the FDCPA.

87.     Section 1692*e* of the FDCPA provides in relevant part as follows:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*     *     *

(2) The false representation of--(A) the character, amount, or legal status of any debt."

*See* 15 U.S.C. § 1692*e*(2).

88.     Courts have routinely determined that § 1692*e*(2) applies to the common practice of debt collection agencies in attempting to collect a debt that has been stayed and/or discharged in bankruptcy.  *Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991, 994-95 (7th Cir. 2003); *cf. Randolph v. IMBS, Inc.,* 368 F.3d 726, 728 (7th Cir. 2004) ("[A] demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not."); *see also Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 817 (S.D. Ohio 2008) (*citing In re Gunter*, 334 B.R. 900, 903-05 (Bankr. S.D. Ohio 2005) (adopting *Randolph* analysis).

89.     Defendants have contacted Plaintiff repeatedly attempting to collect payments from her on the alleged Second Mortgage debt subsequent to: (i) obtaining notice of Plaintiff's bankruptcy filing; (ii) obtaining notice of the Discharge Order; and (iii) receiving numerous notices from Plaintiff and/or Plaintiff's attorney, including before, during and after the bankruptcy, that Defendants' conduct was illegal.

15

90.     As such, Defendants have maliciously, knowingly and/or willfully misrepresented to Plaintiff, through repeated and abusive tactics, that the alleged Second Mortgage debt was still owed when they knew or should have known that it was not.

91.     Such conduct is in violation of the FDCPA (15 U.S.C. § 1692*e*(2)).

92.     Upon information and belief, Defendants' actions described hereinabove are the manifestation of Defendants' practice and policy to ignore the provisions of the Bankruptcy Code applicable to it and to illegally collect, or attempt to collect, pre-petition debts from unsophisticated debtors.

93.     Defendants ongoing written correspondence to Plaintiff has also repeatedly violated 15 U.S.C. § 1692*e* by, *inter alia*: (i) failing to identify the original creditor, the current owner of the debt and/or the account being collected upon; (ii) misleading or misrepresenting the identity of the current owner of the debt by interchanging the names NPR, NPR Capital, Richmond Monroe Group, Inc., American Loan Services and/or FCI Lender Services, Inc. in a confusing manner; (iii) falsely stating that NPR is the "legal owner" of the debt and/or falsely stating that NPR Capital is the "legal owner" of the debt; (iv) communicating with Plaintiff in an attempt to collect a debt before the alleged account had even been transferred from "Coast Capital, LLC"; (v) falsely stating and/or misrepresenting that an entity named "Coast Capital, LLC" exists when it does not; (vi) failing to identify the loan or account despite stating that it had been identified elsewhere in the correspondence; (vii) misrepresenting the job title and/or authority of "Rosalie Bucci"; (viii) falsely stating and/or misrepresenting that "servicing" of the account had been transferred when it had not; (ix) falsely stating and/or misrepresenting that NPR was Plaintiff's mortgage "servicer" when it was not; (x) using deceptive means to mislead Plaintiff into viewing NPR as a mortgage "servicer" when it was not; (xi) falsely stating that

NPR and/or "FCI Lender Services, Inc." employ paralegals; (xii) falsely stating that NPR has a "legal department"; (xiii) using deceptive means in an attempt to acquire personal, financial and/or credit information and/or documentation from Plaintiff; (xiv) misrepresenting the amount of the debt owed; and (xv) using threats of action that were not presently intended to be taken.

94.     Defendants ongoing written correspondence to Plaintiff has also repeatedly violated 15 U.S.C. § 1692*f* by attempting to collect from Plaintiff interest, late fees, foreclosure-related fees, attorneys' fees and/or "legal" fees to which Defendants are not authorized to collect under Ohio law.

95.     Defendants have also violated 15 U.S.C. § 1692*c* by calling Plaintiff's place of employment despite being requested to cease doing so.

96.      Defendants have also violated the FDCPA by sending an unannounced "door knocker" to Ms. Robinson's residence as a coercive collection tactic and nothing more.

97.     Defendants' various filings in the Foreclosure Action and County Recorder's office have proffered false, deceptive and/or misleading representations, including the fabricated and/or fraudulent note allonge as described herein, and as such, also violated Section 1692*e* of the FDCPA.  These filings were also served upon Plaintiff, causing her harm and injury.

98.     The foregoing acts and/or omissions of Defendants constitute numerous violations of the FDCPA.  Many of the foregoing acts and/or omissions continue to date and represent ongoing violations of the FDCPA.

99.     Defendants have recently been subject to numerous complaints and/or lawsuits in other jurisdictions alleging similar conduct.  *See, e.g.*, State of Maryland Cease and Desist Order, dated December 8, 2014 (a copy of which is attached hereto as Exhibit 10).

100.     As a direct and proximate result of Defendants' conduct as outlined above, Plaintiff has suffered and continues to suffer considerable non-economic and economic harm and injury as a direct result of Defendants' collection campaign against her, as further described in Paragraphs 76-82, entitling Plaintiff to actual damages in an amount to be proved at trial pursuant 15 U.S.C. § 1692$k$(1).

101.     Plaintiff is additionally entitled to an award of $1,000.00 in statutory damages pursuant to 15 U.S.C. § 1692$k$(2), plus attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1682$k$(3).

## COUNT TWO
## VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT
### R.C. §§ 1345, et seq.

102.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

103.     Plaintiff is a "consumer" within the meaning of R.C. § 1345.01(D).

104.     Defendants' collection efforts against Plaintiff fall squarely within the purview of the CSPA's protection against unfair, deceptive and/or fraudulent business practices.

105.     As businesses regularly engaged in the collection of defaulted and charged-off debts, as is the case here, Defendants are "suppliers" within the meaning of R.C. § 1345.01(C).

106.     In holding themselves out as the legal owner of debt belonging to Plaintiff, Defendants' collection campaign against Plaintiff constitutes a "consumer transaction" within the meaning of R.C. § 1345.01(A).

107.     Each of Defendants' violations of the FDCPA as outlined above also constitutes a violation of R.C. § 1345.02(A) and/or R.C. § 1345.03(A).

108.    As a direct and proximate result of Defendants' conduct as outlined above, Plaintiff has suffered and continues to suffer considerable non-economic and economic harm and injury as a direct result of Defendants' collection campaign against her, as further described in Paragraphs 76-82.

109.    Defendants' acts and practices as set forth in this complaint were malicious, knowing, willful and/or taken with a conscious disregard for the rights of Plaintiff.

110.    Ohio courts have previously determined Defendants' acts and practices as set forth in this complaint to be in violation of R.C. § 1345.02 and/or R.C. § 1345.03.

111.    Defendants' violations of the CSPA entitle Plaintiff to actual damages in specific amounts to be proved at trial, treble damages and attorney's fees and costs as provided for by the CSPA.

## COUNT THREE
## INVASION OF PRIVACY – INTRUSION UPON SECLUSION

112.    All prior paragraphs are incorporated into this count by reference.

113.    As set forth in this complaint, Defendants have intentionally interfered with and intruded upon the solitude, seclusion and private affairs of Plaintiff and her family in an attempt to compel Plaintiff to pay Defendants money that she does not owe them.

114.    As set forth in this complaint, Plaintiff had a reasonable expectation of privacy and seclusion as to the subject second mortgage debt.

115.    Defendants' conduct is highly offensive to any reasonable person.

116.    As a direct and proximate result of Defendants' intentional intrusion upon the solitude, seclusion and private affairs of Plaintiff, Plaintiff has been damaged in amounts to be proved at trial.

19

117.    Defendants' actions as set forth in this complaint were malicious, willful and/or undertaken with such reckless disregard of Plaintiff's rights that malice may be inferred, subjecting Defendants to liability for punitive damages in such amounts to be proved at trial.

**WHEREFORE**, Plaintiff, Angela P. Robinson, prays for judgment against Defendants, National Payment Relief, LLC, NPR Capital, LLC and Alberto Artasanchez, jointly and severally, as follows:

A.    An award of actual damages in such amounts to be proved at trial;

B.    $1,000.00, representing an award of statutory damages pursuant to 15 U.S.C. § 1692*k*;

C.    An award of treble damages in the amount of three (3) times the amount of actual damages, pursuant to R.C. § 1345.09(B);

D.    An exemplary award of punitive damages assessed against Defendants;

E.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692*k* and/or R.C. § 1345.09(F) and/or Ohio tort law; and

F.    Such other and further relief as may be just and proper.

DATED this 10th day of April, 2015.                    Respectfully Submitted,

    _/s/ Geoff B. McCarrell_____
Geoff B. McCarrell, Esq.
MCCARRELL LAW, LLC
1832 W. 47th Street, 2nd Floor
Cleveland, Ohio 44102
Phone: (440) 226-6187
E-mail: geoff@mccarrelllaw.com

*Counsel for Plaintiff Angela P. Robinson*

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial to a jury on all issues of fact.

*/s/ Geoff B. McCarrell*
Geoff B. McCarrell, Esq.
MCCARRELL LAW, LLC
